IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE INTEREST OF KORBEN L. ET AL.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF KORBEN L. ET AL., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

DEJAH L., APPELLANT, AND ROBERT L. AND JUSTIN N., APPELLEES.


Filed January 21, 2025.    No. A-24-304.


Appeal from the Separate Juvenile Court of Douglas County: CANDICE J. NOVAK, Judge. Affirmed.

Nicholas E. Wurth, of Law Offices of Nicholas E. Wurth, P.C., for appellant.

Hailey Russell, Deputy Douglas County Attorney for appellee State of Nebraska.

Brian J. Muench for appellee Robert L.


RIEDMANN, Chief Judge, and PIRTLE and ARTERBURN, Judges.

PIRTLE, Judge.

## INTRODUCTION

Dejah L. and Robert L. appeal the orders of the separate juvenile court of Douglas County terminating their parental rights to their four minor children. Upon our de novo review, the juvenile court's orders are affirmed.

## BACKGROUND

Dejah and Robert are the parents of Korben L. (born 2011), Arya L. (born 2013), Sebastian L. (born 2014), and Ronan L. (born 2016). Dejah has another child, Draygon W. (born 2006), also known as Jade and June. Dejah has relinquished her parental rights to Draygon, and Robert is not

- 1 -

Draygon's father, so he is not at issue in this appeal. Draygon will only be referenced as necessary where it is relevant to the present appeal.

*Procedural History.*

In October 2019, a petition to adjudicate Draygon, Korben, Arya, Sebastian, and Ronan based upon the acts of Dejah was filed based on Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016), and the court entered an adjudication order in October 2020. A supplemental petition to adjudicate based upon the acts of Robert was filed in December 2019 and the court entered an adjudication order in April 2021. Robert appealed the adjudication order based upon the acts of him, which we affirmed. See *In re Interest of Draygon W.*, 31 Neb. App. 400, 980 N.W.2d 648 (2022).

On January 30, 2023, the State filed a motion for termination of parental rights to Draygon, Korben, Arya, Sebastian, and Ronan, alleging that statutory grounds existed to terminate Dejah's parental rights under Neb. Rev. Stat. § 43-292(2), (6), (7), and (9) (Reissue 2016), and that termination of her parental rights was in the children's best interests. On the same day the State filed a second motion for termination of parental rights, alleging that statutory grounds existed to terminate Robert's parental rights under § 43-292(2), (7), and (9), and that termination of his parental rights was in the children's best interests.

A trial was held on the motions to terminate on multiple dates between September and December 2023. After the first 2 days of trial, Dejah relinquished her parental rights to Draygon and the motion for termination of parental rights as to Draygon was dismissed.

Following trial, the court entered two orders. The first order terminated Dejah's parental rights to Korben, Arya, Sebastian, and Ronan, and the second order terminated Robert's parental rights to the four children. In both orders, the court found that the State had proven each of the statutory grounds alleged in the motions to terminate and that termination was in the children's best interests.

Dejah appealed and Robert cross-appealed.

*Evidence at Termination Trial.*

Tyler Lindsey testified that he and his wife have been the foster parents of Korben and Arya since early December 2020. At first, both children displayed nervous tics including nightmares, frequent bedwetting, and troubling thoughts that were dark and upsetting, causing them distress. Both children also hyperfixated over common ailments, such as mosquito bites and dry skin, to the point that it appeared debilitating and kept them from having a normal childhood. Both children have been in individual therapy since December 2020 and their behaviors had improved. They have less nervous tics and the nightmares and bedwetting have stopped.

When Korben and Arya first came to live with the Lindseys, they were having supervised visits with Dejah and Robert. Immediately following visits, the two children would exhibit behaviors that indicated they were upset, such as bedwetting and nightmares. In the spring 2021, Lindsey was concerned the parents were coaching the children or trying to confuse them regarding their upcoming testimony and recollection of events. Visits were suspended in July 2021 due to Sebastian returning to his foster family from a visit with bruises on his shoulder and chest caused by the parents' use of inappropriate discipline. Korben has not had contact with his parents since May 2022, and Arya has not had contact since June 2022.

Justin Noel and his partner had been Sebastian and Ronan's foster parents since October 2019. When the two children were first placed with Noel, he observed behavioral issues that included Sebastian hitting himself in the head with a closed fist and scratching his forearm. Ronan had a difficult time communicating and was basically nonverbal. Neither child was potty trained. Both children had been in individual therapy for 3 years at the time of trial.

Visits between Sebastian and Ronan and their parents began 3 to 4 months after the children were placed with Noel. Noel testified that the children would be upset after visits. Visits were suspended in July 2021 because Sebastian returned from a visit with injuries.

In early 2022, Sebastian and Ronan started having family therapy with Dejah. When the children were told contact with Dejah was going to resume, they became visibly upset and asked why they had to go. When family therapy with Dejah started, Sebastian became visibly upset, quiet, withdrawn, and reluctant to talk about visits. In May 2023, Sebastian no longer wanted to attend family therapy and stopped going.

Jennifer Richey was Korben's therapist from November 2020 through October 2021, Arya's therapist from December 2020 through October 2021, and Ronan and Sebastian's therapist from January 2021 to October 2021. The referral she received for the children indicated they were removed from their home because of physical abuse by their parents.

Richey testified that Korben had concerning behaviors such as difficulty with emotional regulation and social skills, night terrors, anxiety, and flashbacks. She diagnosed Korben with post-traumatic stress disorder (PTSD), and he previously had been diagnosed with autism by another specialist. Korben's disclosures regarding Dejah included spankings and anger issues, being made to feel left out of the family, physical discipline with a belt, not allowing him or his siblings to go out of the home often, verbal violence between the parents, and witnessing his parents perpetrate physical violence on his siblings. Korben also talked about Draygon having to cook meals for his parents and often being left in charge of the children.

Regarding Robert, Korben disclosed getting hit with a belt on the butt or hands. He also told Richey that Robert would make him and his siblings line up and then tell them to find a belt; the child who found the belt would not get hit with it. He also disclosed that Robert would make Ronan sit on Draygon and make Draygon carry 25-pound weights as forms of punishment. In July 2021, Korben disclosed a violent situation that occurred at a supervised visit, where Robert harmed Sebastian. After this incident, Richey recommended suspending visits.

Korben's other disclosures to Richey included being locked in a pantry closet because he got glue on his hand, being choked by Dejah, his parents punching Draygon in the face, Robert beating Draygon with a post, and Robert sitting on Draygon while he was forced to do push-ups. Korben told Richey he was isolated during visits, often being left alone while his parents were with the other children. He told Richey that his parents acted a lot different when visits were monitored and videoed. He also told her that he felt his parents were trying to get him to lie and to distort his and his siblings' memories of events.

Richey testified that Korben made progress during therapy, which he demonstrated by speaking up and seeking to stop visits based upon how his parents were treating him during the visits.

Richey diagnosed Arya with PTSD and anxiety. Arya's treatment plan involved working through her trauma, decreasing her anxiety, flashbacks and night terrors, and working through her

triggers. During most sessions, Arya disclosed abuse by her parents. Her disclosures included spankings from Dejah, having to line up with her siblings and getting hit with a belt, and witnessing violence between her parents. She also witnessed her parents physically abusing Draygon. They made him hold cans or weights, do push-ups, and wall sits. Sometimes Dejah and Robert would make Ronan sit on Draygon while he did push-ups. Arya told Richey that Dejah would punch Draygon in the face and Robert would beat Draygon with a post. Arya also witnessed Draygon and Korben being choked by Dejah. On one occasion, Dejah and Robert made Korben stay in a closet for 2 days and he could only come out to use the bathroom and to go to school.

Richey testified that Arya made progress in therapy and that the visits ceasing in July 2021 helped her progress. At the time Richey stopped working with Arya, she believed Arya still needed to work on her mental health due to the abuse.

When Sebastian started seeing Richey, she diagnosed him with PTSD and his treatment plan included education on and regulation of emotions and coping skills. Sebastain's concerning behaviors according to the foster parents were that he was not toilet trained, had nightmares, had attachment issues, and had anger outbursts and crying spells.

Sebastian disclosed abuse similar to the abuse disclosed by Korben and Arya, such as yelling, fighting, and spankings with belts. He witnessed Dejah choke Draygon, recalled having to sit on Draygon and Robert sitting on Draygon, and saw blood "falling from [Draygon]." In July 2021, Sebastian disclosed that during a supervised visit, Robert threw him over his shoulder, hanging him by his feet. Robert also grabbed his clavicle area leaving a mark.

Richey testified that Sebastian made progress in therapy, which she attributed in part to visits ending. She believed that ongoing therapy was necessary.

Richey diagnosed Ronan, at the age of 3 or 4, with PTSD. Ronan's treatment plan included emotional education, reducing behavioral outbursts, and working through night terrors. Ronan disclosed physical abuse by Dejah, specifically spankings. He also recalled that his siblings would bite each other and when they did, his parents would make all the children line up and look at the bite marks, then Dejah would either bite or spank the child she suspected of biting. Ronan disclosed that Robert would spank the children with a belt, and he recalled an incident where Robert forced him to excessively brush his teeth, causing him pain. Ronan, like his siblings, told Richey about the supervised visit where Sebastian was injured.

Ronan made progress in therapy such as being toilet trained, having better eating habits, regulating his emotions, and being comfortable with his foster parents leaving. Richey attributed much of his progress to his foster parents.

Richey testified that during his interactions with Dejah, she was hostile, verbally aggressive, and blamed professionals involved in the case, and did not take accountability. Richey did not recommend that the children have family therapy with either Dejah or Robert due to the level of coercion and manipulation that occurred on visits. Richey also did not recommend family therapy with Robert based on his lack of involvement. Richey had concerns about Dejah and Robert's ability to provide the stability and appropriate parenting the children need. In Richey's professional opinion, at the time she stopped treating the children, she believed it was in the children's best interests to terminate the parental rights of Dejah and Robert.

Jea Theis began working with Sebastian and Ronan in February 2022 based on a referral for family therapy with Dejah. The goal was to strengthen the parental relationship and to work individually with Sebastian and Ronan to process their feelings.

After family therapy sessions began with Dejah, Sebastian started wetting the bed and stuttering, both of which had occurred early on in foster care. In May 2023, Sebastian stopped attending family therapy because he did not want to engage in therapy or visits with Dejah. He told Theis he was afraid during the sessions with Dejah because he felt like she was only being nice to get him to say he wanted to live with her. He also told Theis he was fearful because sometimes Dejah was nice and other times she was mean. Sebastian had stomachaches and did not feel well during family therapy sessions which Theis said can be associated with anxiety. Theis testified she was not comfortable forcing Sebastian to attend sessions if he felt unsafe.

After Sebastian stopped attending family therapy, he continued having individual therapy with Theis. He opened up emotionally and communicated how he felt much more effectively. He disclosed abuse that occurred in the home, such as all the children being punished when one child did something wrong, and Robert spanking the children with a belt. Sebastian also told Theis that Dejah's emotions were unpredictable; she would be happy one minute and angry another minute. He described not feeling safe in the home.

Theis testified that Sebastian needs stability, security, consistency, and structure in his environment. Without this type of environment, he will withdraw emotionally and from engagement with others, become dysregulated, have trouble focusing and listening, and it would affect the way he engaged in relationships.

Theis continued to have family therapy with Ronan, as well as individual therapy, after Sebastian stopped attending family therapy. Theis testified that Ronan is an anxious child, which presents as regressive behaviors. Theis also explained that Ronan had a "fawn trauma response," meaning he tended to do what others wanted him to do in an effort to decrease conflict and maintain relationships. Theis testified that there is a bond between Ronan and Dejah and he seemed to enjoy time with her, however, Theis was unsure how much of Ronan's behavior was emotion and how much was a trauma response. Theis stated that Ronan cares about Dejah, but she believed he was also fearful of her.

Theis testified that Ronan needed safety, security, responsiveness, and structure in a family setting. This type of environment would allow Ronan to build up his confidence and his assertiveness to help him identify his own needs and wants rather than the needs and wants of those around him.

During family therapy sessions, Theis would provide feedback to Dejah which was not always well received. It caused Dejah to distrust Theis, act hostilely toward her, and not talk to her at times. Further, Dejah was emotionally unpredictable and would have significant shifts in how she presented and acted with her children from session to session. Theis was concerned as to how Dejah would parent outside of family therapy because she avowed to go back to parenting in a way that worked for her. Theis' additional concerns regarding Dejah's parenting included Dejah's lack of accountability regarding things that have occurred in the home, safety in the home given that Dejah and Robert were still living together and would be coparenting, and the physical fear Sebastian displayed when Dejah would bring up Robert in conversation.

Theis stated that in the year and a half she had been working with Dejah, Sebastian, and Ronan, there had been no involvement by Robert. The only contact she had with Robert was at a family mediation session in December 2022. She believed Robert was unable to participate in services because of his pending appeal of the adjudication. Robert never sought to engage in family therapy.

In her professional opinion, Theis believed that it would be in Sebastian and Ronan's best interests to terminate Dejah and Robert's parental rights. Her opinion as to Dejah was based on the length of time the children have been out of the home, progress and success of the minor children in a stable environment, and interactions in family therapy. Her opinion as to Robert was based on Sebastian's disclosures and fear, Robert's lack of engagement with the healing process, length of time the children have been out of the home, and lack of safety.

Trevor Ammons had been the family's case manager since October 2022. He testified that the children came into the State's care in October 2019 and have not returned to the care of either parent since then. At the time of trial, the minor children had been out of home for 48 months.

When the case was transferred to Ammons, there were no supervised visits occurring. There was only family therapy between Dejah, Sebastian, and Ronan. In the spring of 2022, there had been an order for visits between Korben, Arya, and Dejah. Korben went to one visit and then stopped going. Arya participated in visits for a month or two and then stopped going. Ammons stated that both children stopped participating in visits because it made them uncomfortable. At the time of trial, only Ronan was having contact with Dejah.

In December 2022, family mediation occurred to discuss the case and the recommendation that there be no visitation. Ammons' concerns about restarting visitation with Korben and Arya included the children not wanting contact because they were fearful of their parents, Dejah not being in individual therapy, the parents not doing enough to either rehabilitate or progress as parents, and the children's therapists were not recommending visitation. One of the children's therapists told Ammons that the children had experienced some of the most trauma she had ever seen and they are deeply fearful of their parents.

According to Ammons, family team meetings were unproductive due to Dejah being verbally aggressive toward the therapists and others at the meetings. She would often disagree with the therapist's concerns and try to explain why the concern was not valid. Dejah's hostility toward the therapists was concerning because she was not acknowledging that the children were still impacted by the trauma she caused and was not validating their feelings.

Ammons testified that Dejah's court orders, including participating in individual therapy, had not changed during the time he had been assigned to the case. Overall, Dejah made minimal progress, as she did not acknowledge the trauma that her children have suffered, leaving them at risk for similar harm. She made negative comments about the past therapists, and disagreed with the therapy the children were receiving. Dejah accused the foster parents of telling the children not to attend family therapy and of coaching the children. Ammons testified that Dejah had not participated in the services that would show she had been rehabilitated or could be a safe parent. Dejah did not believe she needed to improve as a parent or participate in further services.

There were no court orders for Robert at the time Ammons became the case manager due to his appeal of the adjudication order. While the appeal was pending Robert was offered voluntary services such as individual therapy, parenting classes, and family support. Ammons had consistent

contact with Robert and every time he met with Robert, he offered voluntary services. Robert refused to participate, asserting that none of the services applied to him.

In March 2023, following this court's affirmance of adjudication, the juvenile court entered rehabilitative orders for Robert, to include a psychological evaluation with parenting assessment, individual therapy, and no contact with the children until recommended by the children's therapists. Robert completed the psychological evaluation with parenting risk assessment in June 2023. Ammons' testified that Robert was not participating in individual therapy.

Robert has accused Ammons of not doing his job correctly and told him that most of the documentation he relied on from past case workers was not the truth. Robert believed the foster parents made up the story about Sebastian getting hurt during a visit and that the children's therapy was not supporting reunification and the children were being told not to want contact with him.

Ammons testified that Robert made no substantive progress due to his refusal to take accountability for his actions and his continued focus on either perceived past wrongdoings or complaints rather than putting in the effort to become a safe parent. Robert has also failed to acknowledge the trauma that he caused the children and failed to participate in services that could have rehabilitated him. According to Ammons, the children remained extremely fearful of Robert. Every time Robert was brought up or discussed, the minor children would either have concerning behaviors or regression.

Based on his education, experience, training, and time spent with the family, Ammons opined that the parental rights of both parents should be terminated as to all four children.

Dr. Theordore DeLaet, a psychologist, conducted the forensic psychological evaluations and parenting risk assessments for Dejah and Robert. Dejah's evaluation was completed in 2021. DeLaet reported that Dejah believed that the children were originally removed due to incompetence by the police department in how they handled the investigation and she felt like she was being treated unfairly. DeLaet identified several risk factors for the children, such as Dejah's moodiness, failure to achieve, antisocial oppositional tendencies, and isolation or withdrawal. DeLaet stated that Dejah's primary focus was on how her family had been mistreated by law enforcement and throughout the juvenile court case. He did not get the impression that Dejah identified any problems she needed to correct. Her continued belief that she was a victim in the juvenile court case reflected a lack of awareness of needing to make personal changes. DeLaet determined Dejah was at a moderate risk to engage in future maltreatment of the children. DeLaet diagnosed Dejah with attention deficit hyperactivity disorder (ADHD), bipolar disorder, and acute stress disorder, which resulted in recommendations for Dejah to obtain a psychiatric medication management referral and a mental health therapy referral.

Regarding Robert, his evaluation was completed in 2023. DeLaet determined he was also at a moderate risk to engage in future child maltreatment. DeLaet testified that he diagnosed Robert with ADHD and a rule-out diagnosis of personality disorder. DeLaet recommended medication consultation for ADHD, mental health counseling, participation in treatment with the children if invited to do so, and marital counseling.

Ruth Mills became Korben and Arya's therapist in October 2022, when they were transferred to her from their prior therapist. The focus of their therapy was on complex trauma treatment. Mills explained that complex trauma occurs when an individual experiences repeated trauma from a trusted adult or caregiver, in this case physical abuse and neglect by both parents.

In addressing Korben and Arya's complex trauma, Mills worked on improving their self-esteem, self-identity, and developing coping skills to regulate trauma triggers.

When Mills began therapy with Korben, he was dealing with anger issues and nightmares. He disclosed multiple instances of mental abuse and punishment, as well as witnessing Draygon being physically abused by his parents. Mills testified that Korben had made therapeutic progress, which included improved communication with caregivers and not always fearing that something bad would happen if he made a mistake. Mills had most recently asked Korben about having a relationship with Dejah a couple months before trial and he was adamant about not having a relationship with her because he is very fearful of her. Korben indicated he feared something bad would happen to him, which Mills believed meant he feared abuse or neglect. Mills testified that Korben did not talk about Robert, but when asked about him, Korben becomes very tense.

When Mills began working with Arya she was struggling with impulsivity, reactivity, and dishonesty. Arya disclosed that she had experienced neglect and witnessed abuse in the past. Specifically, Arya disclosed that she witnessed a lot of physical abuse toward Draygon. She also indicated that she helped Korben when he was punished. When Mills would ask for additional details, Arya would get very upset and Mills would have to calm her down and move to a different topic. Mills testified that this last happened a couple months before trial. Arya had made therapeutic progress, and the focus of her therapy was more on communication, assertive behaviors, and social skills. Mills testified that Arya had been ambivalent about having a relationship with Dejah but in their most recent conversation about it, she indicated she did not want a relationship with her. Arya does not want a relationship with Robert.

Mills never recommended family therapy begin between Korben, Arya, and Dejah because neither child was ready based on their mental health. She stated that having them engage in family therapy before they are ready could retraumatize them. Korben told Mills he does not want family therapy with Dejah.

Mills testified that Korben and Arya need a home where they are cared for, given age-appropriate tasks, know they are safe, and can express themselves without consequence. Without this environment, their mental health may deteriorate which may lead to more community consequences, difficulties with relationships, and potentially self-harming behavior or suicide.

Following the State's case-in-chief, Dejah called Randall Hager, her therapist from May 2021 to August 2022, to testify. Hager discharged Dejah in August 2022 because she had met her therapy goals consistently for 6 months. Hager diagnosed Dejah with PTSD-like symptoms, anxiety, and depression and the goal of her therapy was to provide her with tools to process her own childhood trauma and the trauma from having the children removed and to manage those symptoms. Hager knew Dejah's children had been adjudicated due to abuse and neglect, specifically excessive force when disciplining them. However, Dejah's treatment plan did not focus on addressing her role in her children's removal. Rather, the focus was on Dejah's coping skills and trauma processing.

Hager testified Dejah would talk about accusations being made against her, specifically that she had physically harmed her children while disciplining them. Dejah and Hager did not address or discuss the validity of the accusations in therapy. They did not work on parenting skills; they only discussed parenting skills in the context of relationship building. Hager also testified that

he did not address discipline skills with Dejah as he believed that subject was better suited for family therapy.

ASSIGNMENTS OF ERROR

Dejah and Robert both assign that the juvenile court erred in finding that termination of their parental rights was in the children's best interests.

STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Leyton C. & Landyn C.*, 307 Neb. 529, 949 N.W.2d 773 (2020). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id.*

ANALYSIS

*Statutory Grounds for Termination.*

Neither Dejah nor Robert assign that the juvenile court erred in finding that the State proved the statutory grounds to terminate their parental rights set forth in the motions for termination of parental rights. However, for the sake of completeness, we address whether a statutory ground to terminate existed. Regarding Dejah, the motion alleged that statutory grounds existed under § 43-292(2), (6), (7), and (9). As to Robert, the second motion alleged that statutory grounds existed under § 43-292(2), (7), and (9). The juvenile court found that the State proved all the statutory grounds alleged for Dejah and Robert, respectively.

For a juvenile court to terminate parental rights under § 43-292, it must find that one or more of the statutory grounds listed in this section have been satisfied and that such termination is in the child's best interests. *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019). The State must prove these facts by clear and convincing evidence. *Id.*

Subsection (7) allows for termination when the juvenile has been in an out-of-home placement for 15 or more months of the most recent 22 months. It operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of a parent. *In re Interest of Becka P. et al., supra.* In a case of termination of parental rights based on § 43-292(7), the protection afforded the rights of the parent comes in the best interests' step of the analysis. *In re Interest of Becka P. et al., supra.*

At the time the State filed the motion for termination of parental rights as to Dejah and the second motion for termination of parental rights as to Robert, both filed on January 30, 2023, the children had been placed outside their home for over 39 months as to Dejah, and 37 months as to Robert. Since the children were removed from the home, they have never returned to either parent's care. Therefore, the children had been out of the home for more than 15 of the most recent 22 months; the statutory requirement for termination under § 43-292(7) has been met for both parents.

If an appellate court determines that the lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in § 43-292, the appellate court need not further address the sufficiency of the evidence to support termination under any

other statutory ground. *In re Interest of Becka P. et al., supra.* Because we find that the State presented clear and convincing evidence that a statutory ground to terminate existed under § 43-292(7), we need not address the other statutory grounds.

*Best Interests.*

Dejah and Robert both assign that the juvenile court erred in finding that the State proved by clear and convincing evidence that it was in the children's best interests to terminate their parental rights. Under § 43-292, in addition to providing a statutory ground, the State must show that termination of parental rights is in the best interests of the child. *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015). A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must show that the parent is unfit. *Id.* There is a rebuttable presumption that the best interests of the child are served by having a relationship with his or her parent. *Id.* Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that the parent is unfit. *Id.* In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to the child's well-being. *Id.*

The best interests analysis and the parental fitness analysis are fact-intensive inquiries. *Id.* And while both are separate inquiries, each examines essentially the same underlying facts. *Id.* In proceedings to terminate parental rights, the law does not require perfection of a parent; instead, courts should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child. *In re Interest of Joseph S. et al.*, 291 Neb. 953, 870 N.W.2d 141 (2015).

Korben, Arya, Sebastian, and Ronan have been placed outside of the parental home since October 2019. They were removed from the home due to physical abuse by their parents. All four children have disclosed numerous instances of physical abuse by Dejah and Robert and reported witnessing Dejah and Robert physically abuse a sibling, including Draygon. Specifically, some of the disclosures of abuse included Dejah, Robert, or both hitting the children with a belt, Dejah choking Korben and Draygon, Robert hitting Draygon with a post, Dejah and Robert punching Draygon in the face, Dejah biting the children, Dejah and Robert making Korben stay in a closet for 2 days, and Sebastian being injured by Robert at a supervised visit.

All four children have been diagnosed with PTSD relating to the abuse and neglect they experienced in the family home prior to removal. They have been participating in individual therapy for years to process the trauma caused by the abuse and neglect at home. At the time of trial, they were all still engaging in therapy and continued to be affected by the trauma they experienced.

Despite the abundant evidence of abuse and trauma to the children, neither Dejah nor Robert have taken responsibility for the abuse and trauma the children have endured. Ammons testified that Dejah and Robert failed to acknowledge the trauma they have caused the children or that the children were still impacted by the trauma. In addition, Dejah and Robert blame case professionals, therapists, and foster parents for the lack of progress in their reunification and for

the removal of the children. They focus on perceived past wrongdoings by others and on making complaints, rather than focusing on becoming safe parents.

Theis was also concerned that Dejah was emotionally unpredictable in family therapy and would have significant shifts in how she acted with her children from session to session. She was concerned how Dejah would parent outside of family therapy because she indicated she would go back to parenting in a way that worked for her.

As to Robert specifically, after visits were suspended in July 2021, he has had very little involvement in the case and has failed to show a desire to prove he can be a safe parent. Ammons testified Robert had been offered voluntary services while his adjudication was on appeal, including individual therapy, a parenting class, and family support. However, Robert declined to voluntarily participate in services, asserting that none of the services applied to him. After the adjudication was affirmed, the court ordered Robert to complete a psychological evaluation and participate in individual therapy. At the time of trial, he had completed the psychological evaluation but had not started individual therapy. His visitation with the children remained suspended. Theis testified that in the year and a half she had been working with Dejah, Sebastian, and Ronan, there has been no involvement by Robert. Family therapy was never recommended for Robert because of his lack of involvement, and Robert never sought family therapy with the children.

There is no evidence of a beneficial relationship between any of the children and their parents. When visits were occurring, Korben, Sebastian, and Arya exhibited an increase in troubling behaviors after interacting with their parents. Korben and Arya would experience bedwetting and nightmares after visits. Sebastian and Ronan would be upset after visits.

After visits were suspended in July 2021, Arya and Sebastian both made progress in therapy. According to Korben and Arya's foster parent, Korben has not had any contact with his parents since May 2022, and Arya has not had contact since June 2022.

When Sebastian and Ronan learned that they were going to start family therapy with Dejah, they were upset and asked why they had to go. After family therapy started, Sebastian became visibly upset, quiet, withdrawn, and reluctant to talk about therapy. He also started wetting the bed and stuttering. In May 2023, Sebastian no longer wanted to participate in family therapy with Dejah. After he stopped attending family therapy, he opened up emotionally and communicated his feelings more effectively.

Ronan was the only child having any contact with either parent at the time of trial. Theis testified that Ronan and Dejah had a bond and that Ronan appeared to enjoy family therapy with Dejah. However, Theis also explained that his behavior could be related to how he responds to trauma--doing what others want him to do to decrease conflict and maintain relationships.

Further, the children have expressed being fearful of their parents and they do not want contact with them. Ammons testified Korben and Arya did not want contact because they were fearful of their parents. She also testified that all the children continued to be extremely fearful of Robert. Mills testified that a couple months before trial, Korben was adamant about not having a relationship with Dejah because he was fearful of her. Mills also testified that Arya has indicated she does not want a relationship with either parent. Theis testified that Sebastian stopped attending family therapy because he was fearful of Dejah. Theis also stated that Ronan cares about Dejah, but she believed he was also fearful of her.

Theis, who continued to provide individual therapy to Sebastian and Ronan at the time of trial and provided family therapy to Ronan, testified that in her professional opinion it was in Sebastian and Ronan's best interests to terminate both parent's parental rights. Richey, who had been the individual therapist for all four children, testified that when her involvement with the family ended in October 2021, she opined that termination was in the children's best interests. Finally, Ammons, the case manager since October 2022, testified that in his opinion the parental rights of both parents should be terminated.

Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of Cameron L. & David L.*, 32 Neb. App. 578, 3 N.W.3d 376 (2024). Further, Nebraska courts have recognized that children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *Id.* Dejah and Robert have failed to put themselves in a position to properly parent their children. These children have been in foster care for over 4 years. They deserve stability and security in their lives and should not be suspended in foster care when Dejah and Robert are unable to rehabilitate themselves. Accordingly, we find there was clear and convincing evidence to show that Dejah and Robert were unfit and that terminating their parental rights was in the children's best interests.

CONCLUSION

We conclude the State proved by clear and convincing evidence that grounds for termination of Dejah's and Robert's parental rights existed under § 43-292(7) and that termination of their parental rights was in the children's best interests. The juvenile court's orders are affirmed.

AFFIRMED.